* w: KSC*

# ORIGINAL

JAMES HOCHBERG   #3686
700 Bishop Street, Suite 2100
Bishop Street Tower
Honolulu, Hawaii 96813
Tel. No.:  (808) 534-1514
Facsimile: (808) 538-3075
Email: Jim@JamesHochbergLaw.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 3 0 2014

at _____ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

Attorneys for Plaintiffs Eugene Hamamoto and John P. Roco

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| EUGENE HAMAMOTO and JOHN P. ROCO,<br><br>          Plaintiffs,<br><br>  vs.<br><br>NEIL ABERCROMBIE, in his official capacity as Governor of the State of Hawaii, DEMOCRATIC PARTY OF HAWAII, BRIAN SCHATZ, SCOTT T. NAGO, in his official capacity as the Chief Election Officer of the State of Hawaii, JOY ALLISON, CAMPBELL CAVASSO, BRIAN EVANS, HARRY J. FRIEL, JR., COLLEEN WAKAKO HANABUSA, MICHAEL KOKOSKI, EDDIE PIRKOWSKI, and ARTURO PACHECO REYES,<br><br>          Defendants. | CIVIL NO. **CV14 00491 KSC**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; EXHIBIT "1"; SUMMONS** |

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Seeking to restore and protect Hawaii voters' right to elect their U.S. Senator as guaranteed under the Seventeenth Amendment, Plaintiffs Eugene Hamamoto and John P. Roco (collectively Plaintiffs) allege and aver as follows:

### SUMMARY OF CASE

1.     On May 11, 2014, Defendant Scott T. Nago (Nago) and the State of Hawaii Office of Elections published in the Honolulu Star-Advertiser a "proclamation" stating in part that he and the clerks of the four counties of the State of Hawaii "proclaim that a vacancy election shall be held in conjunction with the Primary Election to be held on Saturday, August 9, 2014, and the General Election to be held on Tuesday, November 4, 2014, between the hours of 7:00 a.m. and 6:00 p.m. throughout the State of Hawaii for the purpose of nominating and/or electing a Senator to serve in the Congress of the United States." See Exhibit "1" attached hereto.

2.     Plaintiffs bring this action challenging the election being conducted by Defendant Nago and the State of Hawaii Office of Elections in relation to filling the vacancy caused by Senator Daniel K. Inouye's death as unconstitutional under the Seventeenth Amendment because the election is not pursuant to a writ of election issued by the Governor and because Defendant Nago's proclamation states

that the candidate elected at the special general election to fill the vacancy shall not take office until January 3, 2015.

3.      Despite the passage of over 18 months since Senator Inouye's death, Defendant Neil Abercrombie (Abercrombie) has yet to comply with the Seventeenth Amendment and issue a writ of election for the holding of an election in which the people of Hawaii can elect a permanent replacement to fill the vacancy caused by Senator Inouye's death.

4.      Plaintiffs also challenge the constitutionality of Section 17-1 of the Hawaii Revised Statutes (HRS) under the Seventeenth Amendment of the United States Constitution because HRS § 17-1 impermissibly requires the Governor of Hawaii to make a "temporary appointment" to fill a Senate vacancy and limits the Governor to choosing an appointee "by selecting a person from a list of three prospective appointees submitted by the same political party as the prior incumbent."

5.      Because of these constitutional flaws in HRS § 17-1, the Hawaii State Legislature has not validly "empower[ed]" the Governor under the Seventeenth Amendment to "make temporary appointment until the people fill" the vacancy caused by Senator Inouye's death, and Defendant Brian Schatz (Schatz) has therefore not been validly appointed to temporarily fill the vacancy.

6.    Additionally, the constitutional flaws in HRS § 17-1 with regard to temporary appointments are unseverable from the part of the statute delaying the election to fill the vacancy to "the following state general election," thereby making the election-timing provision void.

7.    Plaintiffs accordingly seek an order (1) declaring the election being conducted by Defendant Nago and the State of Hawaii Office of Elections in relation to the permanent filling of the vacancy is unconstitutional under the Seventeenth Amendment because the election is not pursuant to a writ of election issued by the Governor; (2) declaring HRS § 17-1 unconstitutional and not validly "empower[ing]" the Governor under the Seventeenth Amendment to "make temporary appointment until the people fill" the vacancy caused by Senator Inouye's death; (3) declaring that Defendant Schatz has not been validly appointed to temporarily fill the vacancy resulting from Senator Inouye's death and enjoining him from acting in and removing him from the office of United States Senator unless and until he is elected in a special general election pursuant to a writ of election issued by the Governor to fill the remainder of Senator Inouye's term, (4) declaring that the constitutional flaws in HRS § 17-1 with regard to temporary appointments are unseverable from the part of the statute delaying the election to permanently fill the vacancy to "the following state general election," thereby making the election-timing provision in HRS § 17-1 void, (5) mandating

Defendant Abercrombie to immediately comply with the Seventeenth Amendment by issuing a writ of election for the holding of a special general election to fill the vacancy at the earliest practicable date; and (6) declaring that the candidate elected at the special general election to fill the vacancy shall take office immediately upon the candidate's election and qualification.

## PARTIES

8.    Plaintiff Eugene Hamamoto (Hamamoto) is a natural person and a citizen, registered voter, resident of the State of Hawaii, and resident of the First Congressional District. He brings this action to enforce his rights as a voter to participate in the direct election of his United States Senator under the Seventeenth Amendment.

9.    Plaintiff John P. Roco (Roco) is a natural person and a citizen, registered voter, and resident of the State of Hawaii. Plaintiff Candidate filed nomination papers with the State of Hawaii Office of Elections (SHOE) as a Republican for the office of United States Senator. He brings this action to enforce his rights as a candidate for the United States Senate.

10.    Defendant Abercrombie is the Governor of the State of Hawaii and is sued in his official capacity. At all times relevant to this action, Defendant Abercrombie was domiciled or otherwise resided in the District of Hawaii.

11.    Democratic Party of Hawaii (DPH) is a political party and a Hawaii nonprofit corporation.

12.    Defendant Schatz is the individual selected by Defendant Abercrombie under color of state law from a list of three prospective appointees submitted by DPH for appointment to fill the vacancy occurring in the office of United States Senator from Hawaii resulting from the death of Senator Inouye on December 17, 2012. At all times relevant to this action, Defendant Schatz was domiciled or otherwise resided in the District of Hawaii. Defendant Schatz filed nomination papers with SHOE as a Democrat for the office of United States Senator.

13.    Defendant Nago is the duly appointed Chief Election Officer of the State of Hawaii and the administrator of SHOE. The duties of the Chief Election Officer include supervising all state elections. Defendant Nago is sued in his official capacity only. At all times relevant to this action, Defendant Nago was domiciled or otherwise resided in the District of Hawaii.

14.    Defendant Joy Allison (Allison) is a natural person and a citizen, registered voter, and resident of the State of Hawaii. Defendant Allison filed nomination papers with SHOE as a Non-Partisan for the office of United States Senator. Plaintiffs do not state a direct cause of action against Defendant Allison,

but join her as a party under Rule 19(b) of the Federal Rules of Civil Procedure (FRCP) for the sole purpose of according complete relief among existing parties.

15.    Defendant Campbell Cavasso (Cavasso) is a natural person and a citizen, registered voter, and resident of the State of Hawaii. Defendant Cavasso filed nomination papers with SHOE as a Republican for the office of United States Senator. Plaintiffs do not state a direct cause of action against Defendant Cavasso, but join him as a party under FRCP Rule 19(b) for the sole purpose of according complete relief among existing parties.

16.    Defendant Brian Evans (Evans) is a natural person and a citizen, registered voter, and resident of the State of Hawaii. Defendant Evans filed nomination papers with SHOE as a Democrat for the office of United States Senator. Plaintiffs do not state a direct cause of action against Defendant Evans, but join him as a party under FRCP Rule 19(b) for the sole purpose of according complete relief among existing parties.

17.    Defendant Harry J. Friel, Jr. (Friel) is a natural person and a citizen, registered voter, and resident of the State of Hawaii. Defendant Friel filed nomination papers with SHOE as a Republican for the office of United States Senator. Plaintiffs do not state a direct cause of action against Defendant Friel, but join him as a party under FRCP Rule 19(b) for the sole purpose of according complete relief among existing parties.

18.    Defendant Colleen Wakako Hanabusa (Hanabusa) is a natural person and a citizen, registered voter, and resident of the State of Hawaii. Defendant Hanabusa is also the duly elected Representative of Hawaii's First Congressional District to the United States House of Representatives. Defendant Hanabusa filed nomination papers with SHOE as a Democrat for the office of United States Senator. Plaintiffs do not state a direct cause of action against Defendant Hanabusa, but join her as a party under FRCP Rule 19(b) for the sole purpose of according complete relief among existing parties.

19.    Defendant Michael Kokoski (Kokoski) is a natural person and a citizen, registered voter, and resident of the State of Hawaii. Defendant Kokoski filed nomination papers with SHOE as a Libertarian for the office of United States Senator. Plaintiffs do not state a direct cause of action against Defendant Kokoski, but join him as a party under FRCP Rule 19(b) for the sole purpose of according complete relief among existing parties.

20.    Defendant Eddie Pirkowski (Pirkowski) is a natural person and a citizen, registered voter, and resident of the State of Hawaii. Defendant Pirkowski filed nomination papers with SHOE as a Democrat for the office of United States Senator. Plaintiffs do not state a direct cause of action against Defendant Pirkowski, but join him as a party under FRCP Rule 19(b) for the sole purpose of according complete relief among existing parties.

21.    Defendant Arturo Pacheco Reyes (Reyes) is a natural person and a citizen, registered voter, and resident of the State of Hawaii. Defendant Reyes filed nomination papers with SHOE as a Non-Partisan for the office of United States Senator. Plaintiffs do not state a direct cause of action against Defendant Reyes, but join him as a party under FRCP Rule 19(b) for the sole purpose of according complete relief among existing parties.

## JURISDICTION AND VENUE

22.    This action arises under the Fourteenth and Seventeenth Amendments to the U.S. Constitution, the laws of the United States (42 U.S.C. § 1983), and under the Constitution and laws of the State of Hawaii. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343 (redress of deprivation under color of any State law of any right, privilege or immunity secured by the U.S. Constitution), and 1367 (supplemental jurisdiction). Declaratory and injunctive relief may be granted by this court as authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and FRCP Rules 57 and 65.

23.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 since at least one of the Defendants resides in the District of Hawaii or a substantial part of the events or omissions giving rise to the claims asserted occurred in the District of Hawaii.

## FACTS COMMON TO ALL COUNTS

24.     On November 2, 2010, Daniel K. Inouye was re-elected to his ninth term as a United States Senator for the State of Hawaii.

25.     In accordance with the Twentieth Amendment to the U.S. Constitution, Senator Inouye's ninth term of six years (Senator Inouye's Ninth Term) began on January 3, 2011, and will end on January 3, 2017.

26.     On December 17, 2012, during the second year of Senator Inouye's Ninth Term, Senator Inouye died, thereby creating a vacancy in the representation of the State of Hawaii in the United States Senate.

27.     Until the ratification of the Seventeenth Amendment in 1913, the U.S. Constitution provided in pertinent part that Senate of the United States was "composed of two Senators from each State, chosen by the Legislature thereof." Art. I, Sec. 3.

28.     Referring to the selection of Senators by state legislatures, Senator William O. Bradley stated in 1911:

> The people are denied the right to choose their own Senators under this Constitution, which was so framed to make easy the corrupt election of Senators. It was so framed—not by intent but by its mechanism—as to permit senatorships to be bought with comparative ease and safety; it was so framed . . . by its mechanism—as to permit corruption and successful rascality.

47 Cong. Rec. 1919 (1911) (statement of Sen. Bradley), as quoted in Laura E. Little, *An Excursion Into the Uncharted Waters of the Seventeenth Amendment*, 64 Temp. L. Rev. 629, 640-41 (1991).

29.    Senator Albert J. Beveridge noted that the selection of Senators by state legislatures injected the evils of partisanship into the process, stating:

> Political parties . . . elect a legislature and [the] majority in that legislature is not supposed, nor even permitted, according to the original theory of the Constitution, to select the best man in the State. . . . **It must select a man of the party which elected the legislature**. . . . So it comes to pass that Senators actually have been . . . selected by the 'party managers' . . . . The party boss has become more potent than the legislature, or even the people themselves, in selecting United States Senators in more than one State.

S. Rep. No. 518, 60th Cong., 1st Sess. 18 (1908) at 9, as quoted in 64 Temp. L. Rev. at 641 (bold emphasis added).

30.    The Seventeenth Amendment ended this partisan state legislative process of selecting United States Senators, stating in its first paragraph: "The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years, and each Senator shall have one vote. The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures."

31.    "**The legislative history establishes that the Seventeenth Amendment was designed in part to wrest control of senatorial selection from powerful groups within political parties**. Those who drafted, debated, passes,

and ratified the Amendment were concerned that the prior system permitting such concentration of power gave rise to the related evils of corruption and inadequate representation. The idea behind direct election was to increase accountability by distributing the vote to more individuals than could be 'bought' or corrupted." 64 Temp. L. Rev. at 642 (bold emphasis added).

32.    The Seventeenth Amendment addresses vacancies in its second paragraph as follows: "When vacancies happen in the representation of any State in the Senate, **the executive authority of such State shall issue writs of election to fill such vacancies**: Provided, That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct." (Bold emphasis added.)

33.    HRS § 17-1 states (bold emphasis added):

When a vacancy occurs in the office of United States senator, the vacancy shall be filled for the unexpired term at the following state general election; provided that the vacancy occurs not later than 4:30 p.m. on the sixtieth day prior to the primary for nominating candidates to be voted for at the election; otherwise at the state general election next following. The chief election officer shall issue a proclamation designating the election for filling the vacancy. **Pending the election, the governor shall make a temporary appointment to fill the vacancy by selecting a person from a list of three prospective appointees submitted by the same political party as the prior incumbent.** The appointee shall serve until the election and qualification of the person duly elected to fill the vacancy and shall be, at the time of appointment, and shall have been, for at least six months immediately prior to the appointment, a member of the same political party as the prior incumbent. The appointee shall be a resident of the State. If the prior incumbent was not a member of any

political party, the governor shall appoint a person who is not and has
not been, for at least six months immediately prior to the appointment,
a member of any political party. All candidates for the unexpired term
shall be nominated and elected in accordance with this title.

34.    As of Sunday, December 23, 2012, the DPH's state central committee

planned to meet on Wednesday morning, December 26, 2012, "to discuss the three

nominees the party will send to Abercrombie for his consideration."

Derrick DePledge, "Key votes in Senate push Dems to action," Honolulu Star-

Advertiser, December 23, 2012, page A29.

35.    "If the state central committee's more than 75 members do not have a

quorum on Wednesday morning, an executive committee of about a dozen

members, including [DPH chair Dante] Carpenter, would select the three

nominees." *Id.*

36.    "According to an email sent to state central committee members

outlining the proposed rules for the special meeting, each candidate who applies

before the application deadline on Monday will have up to two minutes to address

the committee on Wednesday. There will be no question-and-answer period." *Id.*

37.    "After the candidates have spoken, the state central committee will go

into executive session, where members can speak for or against a candidate for up

to one minute each during a 30-minute discussion." *Id.*

38.    "The committee will then hold a roll call vote, where each member

can vote for three candidates. The final three will be determined by a plurality of

votes. If there is a tie for the third spot, each member will get one vote to break the deadlock." *Id.*

39.    On December 26, 2012, after following the above-described process, the DPH submitted a list to Defendant Abercrombie containing the names of Esther Kia´aina, Defendant Hanabusa, and Defendant Schatz.

40.    On December 26, 2012, Defendant Abercrombie publicly announced via press release "the appointment of current Lt. Gov. Brian Schatz to fill the U.S. Senate seat left vacant by the passing of Sen. Daniel K. Inouye."

41.    Defendant Abercrombie's announcement stated further in pertinent part: "Today, I will inform the leadership of the United States Senate that I have appointed Brian Schatz as the next United States Senator from Hawaii."

## COUNT I: DEFENDANT ABERCROMBIE HAS NOT ISSUED A WRIT OF ELECTION AS REQUIRED BY THE SEVENTEENTH AMENDMENT

42.    Plaintiffs hereby reallege and incorporate by reference the allegations in all of the previous paragraphs as though fully set forth herein.

43.    Defendant Abercrombie is the executive authority of the State of Hawaii.

44.    The second paragraph of the Seventeenth Amendment "imposes a duty on state executives to make sure that an election fills each vacancy." *Judge v. Quinn*, 612 F.3d 537, 555, *opinion amended on denial of reh'g*, 387 F. App'x 629 (7th Cir. 2010), *cert. denied* 131 S.Ct. 2958 (2011).

45.    "The language of the Seventeenth Amendment is enough on its own to authorize the executive's action, no matter what state law says or does not say." *Id.* at 555-56.

46.    "The governor has a duty to issue a writ of election to fill [a] vacancy." *Id.* at 555.

47.    The writ of election "plays the important administrative role of authorizing state officials to provide for the myriad details necessary for holding an election (printing ballots, locating voting places, securing election personnel, and so on)." *Id.* at 552.

48.    A special general election in which the people of Hawaii can elect a permanent replacement to fill the vacancy caused by Senator Inouye's death must be held as soon as practicable.

49.    Despite the passage of over 18 months since Senator Inouye's death, Defendant Abercrombie has yet to comply with the Seventeenth Amendment and issue a writ of election for the holding of an election in which the people of Hawaii can elect a permanent replacement to fill the vacancy caused by Senator Inouye's death.

50.    So much time has passed since the creation of the vacancy that it amounts to a *de facto* refusal by Defendant Abercrombie to issue a writ of election

14

for the holding of an election in which the people of Hawaii can elect a permanent replacement to fill the vacancy caused by Senator Inouye's death.

51.    On May 11, 2014, Defendant Nago published in the Honolulu Star-Advertiser a "proclamation" stating in part that he and the clerks of the four counties of the State of Hawaii "proclaim that a vacancy election shall be held in conjunction with the Primary Election to be held on Saturday, August 9, 2014, and the General Election to be held on Tuesday, November 4, 2014, between the hours of 7:00 a.m. and 6:00 p.m. throughout the State of Hawaii for the purpose of nominating and/or electing a Senator to serve in the Congress of the United States."

52.    Defendant Nago's "proclamation" states further in part that the term for which candidates are to be nominated and/or elected to the office of "UNITED STATES SENATOR (Vacancy)" will comprise "Two years (noon, **January 3, 2015** to noon, January 3, 2017)." (Bold emphasis added.)

53.    Defendant Nago is not the executive authority of the State of Hawaii and is therefore not authorized by the Seventeenth Amendment to issue a writ of election to fill the Inouye vacancy.

54.    Defendant Nago's "proclamation" is not a writ of election to fill the Inouye vacancy.

55.    Pursuant to Defendant Nago's "proclamation," Defendant Nago and SHOE purported to conduct a primary election on August 9, 2014, "for the purpose of nominating and/or electing a Senator."

56.    The election currently being conducted by Defendant Nago and SHOE in relation to the permanent filling of the vacancy is unconstitutional under the Seventeenth Amendment because the election is not being conducted pursuant to a writ of election issued by the Governor

57.    If Defendant Abercrombie continues to refuse to issue a writ of election calling for an election to fill the Inouye vacancy, there will be no constitutionally valid election to permanently fill the Inouye vacancy and Plaintiff Eugene Hamamoto will be denied the opportunity to elect a replacement senator.

58.    Defendant Nago's "proclamation" providing that the replacement senator will not begin to serve until "January 3, 2015" infringes on Plaintiff Eugene Hamamoto's right to be represented by an elected senator immediately upon that individual's election and qualification.

59.    If Defendant Abercrombie continues to refuse to issue a writ of election calling for an election to permanently fill the Inouye vacancy, there will be no constitutionally valid election to fill the Inouye vacancy and Plaintiff John P. Roco will be denied the opportunity to be elected as a replacement senator.

60.     Defendant Nago's "proclamation" expressly provides that the replacement senator will not begin to serve until "January 3, 2015," denying Plaintiff John P. Roco's right, if he is constitutionally elected and qualified to fill the vacancy, to begin serving immediately upon such election and qualification.

61.     "The district court has the power to order the state to take steps to bring its election procedures into compliance with rights guaranteed by the federal Constitution, even if the order requires the state to disregard provisions of state law that otherwise might ordinarily apply to cause delay or prevent action entirely." *Judge v. Quinn*, 387 F. App'x 629, 630 (7th Cir. 2010).

62.     "It is elementary that the Seventeenth Amendment's requirement that a state governor issue a writ of election to guarantee that a vacancy in the state's senate delegation is filled by an election is an aspect of the supreme law of the land. U.S. Const. art VI, cl. 2. To the extent that [Hawaii] law makes compliance with a provision of the federal Constitution difficult or impossible, it is [Hawaii] law that must yield." *Id.* at 630 (citations omitted, bracketed modifications by Plaintiffs).

## COUNT II: DEFENDANT SCHATZ NOT VALIDLY APPOINTED

63.     Plaintiffs hereby reallege and incorporate by reference the allegations in all of the previous paragraphs as though fully set forth herein.

64.    HRS § 17-1 requires the Governor of Hawaii "to pick one of the three persons served up by state party leaders." Vikram David Amar, *Are Statutes Constraining Gubernatorial Power to Make Temporary Appointments to the United States Senate Constitutional Under the Seventeen Amendment?*, 35 Hastings Const. L.Q. 727, 728 (2008).

65.    The Seventeenth Amendment, "by its terms, creates potential appointment power only in governors; it does not authorize legislatures to participate in such appointment decisions, beyond simply determining whether the governors should be allowed to make temporary appointments or not." *Id.*, at 729-30.

66.    "The part of [Hawaii] law that delegates to Party chiefs the task of generating a short list seems to run quite counter to the historical anti-boss spirit of the direct election drive" embodied in the Seventeenth Amendment. *Id.* at 743 (bracketed modification by Plaintiffs).

67.    The second paragraph of the Seventeenth Amendment "says state legislatures 'may *empower*' governors to make temporary appointments, until the people fill the vacancies by election. 'Empower' does not mean 'require;' rather it means 'to create the power to do *or not do* something.' The Constitution generally distinguishes between powers and duties, and the Seventeenth Amendment's

words seem to speak only to possible gubernatorial powers, not any gubernatorial duties." 35 Hastings Const. L.Q. 727 at 736 (footnotes omitted).

68.    HRS § 17-1 therefore impermissibly purports to require the Governor to make an appointment.

69.    There is therefore no constitutionally valid "empower[ment]" of the Governor by HRS § 17-1 to fill the vacancy caused by Senator Inouye's death.

70.    HRS § 17-1 further violates the Seventeenth Amendment in delegating to Party bosses the task of generating a short list for appointment by the Governor to fill a Senate vacancy and in impermissibly purporting to require the Governor to make an appointment.

71.    Because of these constitutional flaws in HRS § 17-1, the Hawaii State Legislature has not validly "empower[ed]" the Governor under the Seventeenth Amendment to "make temporary appointment until the people fill the vacancies by election as the legislature may direct."

72.    Defendant Schatz has therefore not been validly appointed to serve as a United States Senator under the Seventeenth Amendment.

73.    Defendant Schatz's continuing to hold himself out as a validly appointed United States Senator from Hawaii is in derogation of Plaintiff Eugene Hamamoto's right under the Seventeenth Amendment to representation in the

United States Senate by a Senator duly elected by the people of the State of Hawaii.

74.    Defendant Schatz's continuing to hold himself out as a validly appointed United States Senator from Hawaii unconstitutionally disadvantages Plaintiff John P. Roco's candidacy because it has enabled Defendant Schatz to utilize campaign materials in the election being conducted by Defendant Nago and SHOE by portraying himself as an incumbent United States Senator from Hawaii.

## COUNT III: A SPECIAL GENERAL ELECTION IS REQUIRED TO FILL THE VACANCY AT THE EARLIEST PRACTICABLE DATE

75.    Plaintiffs hereby reallege and incorporate by reference the allegations in all of the previous paragraphs as though fully set forth herein.

76.    HRS § 17-1 provides in part that a vacancy in the office of United States Senator "shall be filled for the unexpired term at the following state general election; provided that the vacancy occurs not later than 4:30 p.m. on the sixtieth day prior to the primary for nominating candidates to be voted for at the election."

77.    The "following state general election" after Senator Inouye's death on December 17, 2012, is the general election scheduled to be held on November 4, 2014 (November 2014 General).

78.    The "primary for nominating candidates to be voted for at the election" occurred on August 9, 2014 (August 2014 Primary).

79.    The vacancy resulting from Senator Inouye's death occurred "not later than 4:30 p.m. on the sixtieth day prior to the" August 2014 Primary.

80.    Thus, HRS § 17-1 designates the November 2014 General for the filling of the vacancy resulting from the Senator Inouye's death.

81.    It is evident based upon a review of HRS § 17-1 and the balance it was designed to achieve in requiring the Governor to fill the Senate vacancy from a short list submitted by the Party bosses of the fallen Senator while postponing the special election to fill the vacancy until the next state general election (a period of over 22 months in the instant case and potentially as long as 29 months) that the appointment process was an essential and indispensable part of HRS § 17-1 and that the Hawaii State Legislature would not have wanted the rest of HRS § 17-1 to stand without this temporary appointment process.

82.    The constitutional flaws in HRS § 17-1 in delegating to Party bosses the task of generating a short list for appointment by the Governor and in impermissibly requiring the Governor to make an appointment are therefore unseverable from the part of the statute establishing the November 2014 General for the filling of the vacancy resulting from Senator Inouye's death.

83.    HRS § 17-1 is therefore invalid in its entirety under the U.S. Constitution.

84.     Because HRS § 17-1 is invalid in its entirety, the second paragraph of the Seventeenth Amendment governs the procedure for filling a Senate vacancy without modification by the proviso, as follows: "When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies . . . ."

85.     "To summarize, the vacancy-filling provision in the second paragraph of the Seventeenth Amendment imposes two requirements. First, every time that a vacancy happens in the state's senate delegation, the state must hold an election in which the people elect a permanent replacement to fill the vacant seat. Second, the executive officer of the state must issue a writ of election that includes a date for such an election to take place. Whether the vacancy is first filled by a temporary appointee, as permitted by the proviso, is a matter left up to the state and is governed by state law. The temporary appointment ends when the people fill the vacancy in an election." *Judge v. Quinn*, 612 F.3d at 554.

86.     A special general election to permanently fill the Inouye vacancy must be held at the earliest practicable date.

87.     Under HRS § 11-91.5(a), any federal election "held other than on the date of a regularly scheduled primary or general election may be conducted by mail."

88.    Whichever means is used to conduct the election the vacancy, "the state should endeavor to certify the results of that election as soon as possible, so that the replacement senator may present his or his credentials to the Senate and take office promptly." 612 F.3d at 554.

89.    Delaying the special general election beyond the earliest practicable date denies Plaintiff Eugene Hamamoto his constitutionally protected right under the Seventeenth Amendment to elect a replacement senator.

90.    Delaying the special general election beyond the earliest practicable date denies Plaintiff John P. Roco his constitutionally protected right as a duly qualified candidate to stand for election to permanently fill the Inouye vacancy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.    Declaring that the election currently being conducted by Defendant Nago and the State of Hawaii Office of Elections in relation to the permanent filling of the vacancy is unconstitutional under the Seventeenth Amendment because the election is not pursuant to a writ of election issued by the Governor.

2.    Declaring that HRS § 17-1 violates the Seventeenth Amendment in impermissibly requiring the Governor of Hawaii to "make a temporary appointment" to fill a Senate vacancy and limiting the Governor to choosing an appointee "by selecting a person from a list of three prospective appointees

submitted by the same political party as the prior incumbent," and that because of these constitutional flaws in HRS § 17-1, the Hawaii State Legislature has not validly "empower[ed]" the Governor under the Seventeenth Amendment to "make temporary appointment until the people fill the" vacancy caused by Senator Inouye's death.

3.      Declaring that Defendant Schatz has not been validly appointed to serve as a United States Senator and enjoining him from acting in and removing him from the office of United States Senator unless and until he is elected in the special general election to permanently fill the remainder of Senator Inouye's term.

4.      Declaring that the constitutional flaws in HRS § 17-1 are unseverable from the part of the statute delaying the election to fill the vacancy to "the following general election," thereby making the election-timing provision void.

5.      Issuing an injunction mandating Defendant Abercrombie to immediately comply with the Seventeenth Amendment by issuing a writ of election for the holding of a special general election to fill the vacancy at the earliest practicable date.

6.      Declaring that the candidate elected at the special general election to fill the vacancy shall take office immediately upon the candidate's election and qualification.

7.    On all counts, attorneys' fees, costs, and such other and further relief as this Court may deem just and proper.

DATED:    Honolulu, Hawai'i; October 30, 2014.

JAMES HOCHBERG

Attorney for Plaintiffs