IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| EUGENE HAMAMOTO and JOHN P. ROCO,<br><br>          Plaintiffs,<br><br>    vs.<br><br>DAVID Y. IGE, in his official capacity as Governor of the State of Hawaii, DEMOCRATIC PARTY OF HAWAII, BRIAN SCHATZ, SCOTT T. NAGO, in his official capacity as the Chief Election Officer of the State of Hawaii, JOY ALLISON, CAMPBELL CAVASSO, BRIAN EVANS, HARRY J. FRIEL, JR., COLLEEN WAKAKO HANABUSA, MICHAEL KOKOSKI, EDDIE PIRKOWSKI and ARTURO PACHECO REYES,<br><br>          Defendants. | CIVIL NO. 14-00491 DKW-BMK<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS COMPLAINT; (2) GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM; AND (3) DENYING DEFENDANT BRIAN EVANS' MOTION FOR SANCTIONS** |

**ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS COMPLAINT; (2) GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM; AND (3) DENYING DEFENDANT BRIAN EVANS' MOTION FOR SANCTIONS**

## INTRODUCTION

Hamamoto and Roco challenge the temporary appointment and subsequent special election to fill the United States Senate seat vacated by the death of Senator Daniel K. Inouye in December 2012.  They allege that the State of Hawaii violated the Seventeenth Amendment to the United States Constitution because: (1) the Governor did not issue a "writ of election"; and (2) Haw. Rev. Stat. ("HRS") § 17-1, the provision governing temporary appointments for U.S. Senators, impermissibly delegates a segment of the selection process to a political party.  Because the November 2014 special election has passed, this case is moot, and the Court is without subject matter jurisdiction to hear the dispute.  Accordingly, both the State Defendants' Motion to Dismiss and Senator Brian Schatz's Motion to Dismiss are GRANTED.  Plaintiffs' Motion to Dismiss the Counterclaim filed by Brian Evans is also GRANTED, and Evans' Motion for Sanctions is DENIED.

## BACKGROUND

The Seventeenth Amendment proclaims:

> The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote.  The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures.

When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: Provided, That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

This amendment shall not be so construed as to affect the election or term of any Senator chosen before it becomes valid as part of the Constitution.

U.S. Const. amend. XVII.

HRS § 17-1 governs the filling of vacancies for the United States Senate:

When a vacancy occurs in the office of United States senator, the vacancy shall be filled for the unexpired term at the following state general election; provided that the vacancy occurs not later than 4:30 p.m. on the sixtieth day prior to the primary for nominating candidates to be voted for at the election; otherwise at the state general election next following. The chief election officer shall issue a proclamation designating the election for filling the vacancy. Pending the election, the governor shall make a temporary appointment to fill the vacancy by selecting a person from a list of three prospective appointees submitted by the same political party as the prior incumbent. The appointee shall serve until the election and qualification of the person duly elected to fill the vacancy and shall be, at the time of appointment, and shall have been, for at least six months immediately prior to the appointment, a member of the same political party as the prior incumbent. The appointee shall be a resident of the State. If the prior incumbent was not a member of any political party, the governor shall appoint a person who is not and has not been, for at least six months immediately prior to the appointment, a member of any political party. All candidates for the unexpired term shall be nominated and elected in accordance with this title.

HRS § 17-1.

On December 17, 2012, during the second year of his ninth term, Senator Inouye died. On December 26, 2012, pursuant to HRS § 17-1, the Democratic Party of Hawaiʻi submitted a list of three prospective appointees to then-Governor Neil Abercrombie. Later that same day, selecting from among those on the Democratic Party's list, Governor Abercrombie appointed now-Senator Schatz to temporarily fill the vacancy. Complaint ¶¶ 39-41. On May 11, 2014, Defendant Scott T. Nago, Chief Election Officer, and the State of Hawaii Office of Elections, published in the Honolulu Star-Advertiser a proclamation stating in part that –

> a vacancy election shall be held in conjunction with the Primary Election to be held on Saturday, August 9, 2014, and the General Election to be held on Tuesday, November 4, 2014, between the hours of 7:00 a.m. and 6:00 p.m. throughout the State of Hawaii for the purpose of nominating and/or electing a Senator to serve in the Congress of the United States.

Complaint ¶ 1; Ex. 1 (5/11/14 Proclamation).

Senator Schatz won the August 9, 2014 Democratic Primary election. *See* Schatz Ex. 1 (Primary Election Results). He then won the special vacancy election held during the November 4, 2012 General Election. *See* Schatz Ex. 2 (General Election Results). On November 24, 2014, Governor Abercrombie and Nago executed a Certificate of Election for Unexpired Term, certifying that Senator

Schatz was "duly chosen by the qualified electors of the State of Hawaii a Senator for the unexpired term ending at noon on the 3rd day of January, 2017, to fill the vacancy in the representation from said State in the Senate of the United States caused by the death of Daniel K. Inouye." *See* Schatz Ex. 3 (11/24/14 Certificate of Election for Unexpired Term). On December 2, 2014, Senator Schatz was sworn in to fill the remainder of Senator Inouye's ninth term.

On October 30, 2014, less than a week prior to the special vacancy election and General Election, Hamamoto and Roco filed the instant Complaint. The Complaint alleges that the December 26, 2012 appointment of Senator Schatz and the November 4, 2014 special election are the result of unconstitutional procedures. Hamamoto is "a citizen, registered voter, [and] resident of the State of Hawaii," who "brings this action to enforce his rights as a voter to participate in the direct election of his United States Senator[.]" Complaint ¶ 8. Roco is "a citizen, registered voter, and resident of the State of Hawaii," who "filed nomination papers with the State of Hawaii Office of Elections (SHOE) as a Republican for the office of United States Senator. He brings this action to enforce his rights as a candidate for the United States Senate." Complaint ¶ 9.

In their complaint, Hamamoto and Roco seek an order from this Court:

(1) declaring the election being conducted by Defendant Nago and the State of Hawaii Office of Elections in relation to the permanent filling of the vacancy is unconstitutional under the Seventeenth Amendment because the election is not pursuant to a writ of election issued by the Governor; (2) declaring HRS § 17-1 unconstitutional and not validly "empower[ing] the Governor under the Seventeenth Amendment to "make temporary appointment until the people fill" the vacancy caused by Senator Inouye's death; (3) declaring that Defendant Schatz has not been validly appointed to temporarily fill the vacancy resulting from Senator Inouye's death and enjoining him from acting in and removing him from the office of United States Senator unless and until he is elected in a special general election pursuant to a writ of election issued by the Governor to fill the remainder of Senator Inouye's term, (4) declaring that the constitutional flaws in HRS § 17-1 with regard to temporary appointments are unseverable from the part of the statute delaying the election to permanently fill the vacancy to "the following state general election," thereby making the election-timing provision in HRS § 17-1 void, (5) mandating Defendant Abercrombie to immediately comply with the Seventeenth Amendment by issuing a writ of election for the holding of a special general election to fill the vacancy at the earliest practicable date; and (6) declaring that the candidate elected at the special general election to fill the vacancy shall take office immediately upon the candidate's election and qualification.

Complaint ¶ 7.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. In opposition to the motions, Plaintiffs withdraw their request to set aside the results of the November 2014 election. "However, Plaintiffs still seek declaratory relief to rectify the unconstitutional

nature of Hawaii's election law, which has resulted . . . in an ongoing deprivation and abridgment of Plaintiffs' right to elect their Senators[.]" Mem. in Opp. to State Motion at 3; *see also* Pls.' Notice of Voluntary Dismissal, Dkt. No. 56, ¶ 6 ("Plaintiffs expressly rescind[] their request for a new election, recognizing that upsetting the results of the November [2014] election would not serve the interests of democracy[.]"); *id.* ¶ 10 ("Plaintiffs seek only declaratory relief striking down Hawaii's procedures for filling Senate vacancies because they violate the Seventeenth Amendment.").

Plaintiffs voluntarily dismissed all Defendants except Governor David Ige and Nago, in their official capacities, Senator Schatz, the Democratic Party of Hawaii, and Brian Evans.[1] Evans filed a Counterclaim for malicious prosecution and a Motion for Sanctions. Plaintiffs seek dismissal of Evans' Counterclaim and denial of his request for sanctions.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss claims over which it lacks proper subject matter jurisdiction. "[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined to the

---

[1]Evans filed an Answer and Counterclaim on December 1, 2014.

four corners of the complaint—it may consider facts and need not assume the truthfulness of the complaint[,]" and the existence of disputed material facts will not preclude the court from evaluating the existence of subject matter jurisdiction. *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *see also Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir .2000).

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct"

do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered on a Rule 12(b)(6) motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## DISCUSSION

The Court first addresses Defendants' motions to dismiss, before turning to the motions relating to Evans' Counterclaim and request for sanctions. Because this action is moot, the Court does not reach Defendants' alternative arguments, including standing and the political question doctrine, nor does the Court express an opinion on the merits of the claims.

## I.     Defendants' Motions to Dismiss Are Granted On Mootness Grounds

### A.     This Case Is Moot

> "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue

> throughout its existence (mootness)." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) (internal quotation marks omitted). Mootness is a jurisdictional issue, and "federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists." *Id.* "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir. 1999).

*Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003).

An action becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478 (1982). When this happens, the action fails to contain a "case or controversy" under Article III of the United States Constitution. *See In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (citation omitted); U.S. Const. art. 3, § 2. "The mootness doctrine 'requires that an actual, ongoing controversy exist at all stages of federal court proceedings.'" *Leigh v. Salazar*, 677 F.3d 892, 896 (9th Cir. 2012).

The test for mootness of a claim for declaratory relief is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174-75 (9th Cir. 2002) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)). Accordingly, the Court must inquire

"whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty and controversy giving rise to the proceedings." *Natural Res. Defense Council, Inc. v. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992). In order to obtain declaratory relief, a plaintiff must show "a very significant possibility of future harm; it is insufficient . . . to demonstrate only past injury." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

Thus, in order to satisfy the Article III "case or controversy" requirement, the dispute must not only be "definite and concrete" and "real and substantial," but also resolvable by "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007) (citation omitted).

Plaintiffs cannot dispute that the passage of the 2014 election has mooted their pre-election claims, resulting in their abandonment of any request to overturn the Governor's temporary appointment or the election results, or to otherwise unseat Senator Schatz. Instead, they attempt to recast their Complaint in the name of democracy, seeking what they characterize as limited declaratory relief.

Plaintiffs challenge, in essence, the *next time* HRS § 17-1 is invoked. What they seek, however, amounts to an advisory ruling that HRS § 17-1 is unconstitutional based on the incumbent political party's role in sending a short list to the Governor for a U.S. Senate vacancy appointment, and the amount of time between such an appointment and a special election. Plaintiffs seek this ruling in a factual vacuum. Senator Schatz has already been appointed, elected, and sworn in to the remainder of Senator Inouye's ninth term. There are no allegations relating to specific future vacancies, appointments, elections, or government conduct—only speculation and conjecture. Article III prohibits this Court from granting declaratory relief where "changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 925 n.4 (9th Cir. 2000). The declaratory judgment requested by Plaintiffs requires an advisory opinion, which the Court is constitutionally prohibited from issuing. *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 735 (1978).

### B. The "Capable of Repetition, Yet Evading Review" Exception Does Not Apply

Courts recognize an exception to the mootness doctrine, where a case presents an issue that is "capable of repetition, yet evading review." *Weinstein v.*

*Bradford*, 423 U.S. 147, 149 (1975) (citation omitted). Plaintiffs rely on the application of this exception, without which they acknowledge this action cannot proceed. *See* Pls.' Mem. in Opp. to State Motion at 3-7. To fit within the exception, a case must contain the following two elements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein*, 423 U.S. at 149 (citing *Sosna v. Iowa*, 419 U.S. 393 (1975)). Neither element is present here.

### 1. <u>Duration of Challenged Action</u>

Ninth Circuit law mandates the "capable of repetition, yet evading review" exception to be applied "sparingly, and only in 'exceptional situations.'" *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014)(citation omitted).

> Controversies that are not of "inherently limited duration" do not create "exceptional situations" justifying the rule's application, because, even if a particular controversy evades review, there is no risk that future repetitions of the controversy will necessarily evade review as well. As we have explained, "[t]he exception was designed to apply to situations where the type of injury involved inherently precludes judicial review, not to situations where . . . [review is precluded as a] practical matter." *Bunker*, 820 F.2d at 311.

*Id.* at 837 (brackets in original). To be certain -

For a controversy to be "too short to be fully litigated prior to cessation or expiration," it must be of *"inherently* limited duration." *Doe*, 697 F.3d at 1240 (emphasis added). This is so because the "capable of repetition, yet evading review" exception is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would *always* evade judicial review. *Id.* at 1240-41; *see also Bunker Ltd. P'ship v. United States (In re Bunker Ltd. P'ship)*, 820 F.2d 308, 311 (9th Cir. 1987) ("[t]he exception was designed to apply to situations where the type of injury involved inherently precludes judicial review"); 13C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures: Jurisdiction and Related Matters § 3533.8.2 (3d ed.2013) (collecting cases).

*Id.*

In *Protectmarriage.com*, political committees that supported the passage of California's Proposition 8 sought an exemption from future campaign contribution reporting requirements on the basis that the committees might support future campaigns opposing same sex marriage and that the State's disclosure requirements might deter potential contributions to such future efforts. The Ninth Circuit held that the "capable of repetition, yet evading review" exception did not apply because there was no "inherent limit" on the duration of the controversy. *Protectmarriage.com* further explained that a "court order temporarily excusing Appellants from the [state statute's] reporting deadline or enjoining the state from publicly disclosing Appellants' filings could have permitted the parties to fully

litigate this case on the merits.  Appellants simply failed to obtain such an order."
*Id.* at 837.

The same is true here.  In this case, the Governor's temporary Senate vacancy appointment occurred on December 26, 2012, followed on May 14, 2014 by Nago's issuance of the proclamation announcing the election for a permanent replacement.  Plaintiffs, however, waited until October 30, 2014 to file their Complaint, a matter of days prior to the November 4, 2014 General Election, and at no time did they seek or have they sought preliminary injunctive relief.[2]  The long gap in time between the purported initial injury inflicted by the December 26, 2012 vacancy appointment and the Complaint filed nearly two years later prevented the Court from ruling on the issues well before they became moot.  The facts of this case, in other words, depict a scenario that defies an "evading review" determination.  *See id.* at 837 ("If Appellants were to bring a similar action in the future, their claims would not, by their nature, again evade review, because a different litigation strategy could maintain a live controversy until the action's final resolution").

_____

[2]At oral argument, the reason offered by Plaintiffs for the substantial delay in filing suit was their difficulty in finding counsel and the high cost of litigation.

Moreover, "a party may not profit from the 'capable of repetition, yet evading review' exception . . . where through his own failure to seek and obtain [prompt relief] he has prevented [an] appellate court from reviewing the trial court's decision." *Id.* (citations omitted; brackets in original); *see also Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1016 (9th Cir. 1990) (holding that a party may not invoke the "capable of repetition, yet evading review" exception where its failure to obtain prompt relief has prevented judicial review); *Bunker*, 820 F.2d at 311 ("The exception was designed to apply to situations where the type of injury involved inherently precludes judicial review, not to situations where the failure of parties to take certain actions has precluded review as a practical matter.").

While Plaintiffs are undoubtedly correct that litigating their claims now, without the time pressure of an actual appointment and election, would be more convenient for all concerned, mootness cannot take a back seat to expediency. The absence of a fact pattern in which HRS § 17-1 was employed, or even of evidence that the current version of HRS § 17-1 is what would be used by the state if and when confronted with any future Senate vacancy, is precisely why federal courts do not issue advisory opinions. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("Our role is neither to issue advisory opinions nor

to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."); *id.* at 1141 (declining to reach merits of constitutional challenge to state law "in the absence of any identifiable tenants and with no concrete factual scenario that demonstrates how the laws, as applied, infringe their constitutional rights. This case is a classic one for invoking the maxim that we do not decide 'constitutional questions in a vacuum.'") (quoting *American-Arab Anti-Discrimination Comm'n v. Thornburgh*, 970 F.2d 501, 511 (9th Cir. 1992)).

The out-of-circuit cases relied upon by Plaintiffs do not transform the instant dispute into one of *inherently* limited duration. The facts in those cases are markedly different. For example, in *Jackson v. Ogilvie*, 426 F.2d 1333, 1334 (7th Cir. 1970), and *Judge v. Quinn*, 612 F.3d 537, 544 (7th Cir. 2010), the state had not called *any* election at all. Here, there was an election, which Plaintiffs failed to timely challenge, beyond filing their Complaint on the eve of the General Election. Indeed, Plaintiffs participated in the very election proclaimed by the Office of Elections in May 2014. *See*, *e.g.*, Schatz Ex. 1 (showing election results, including Plaintiff Roco's August 2014 Republican Primary loss). This is not a case in which the duration of time between the vacancy, proclamation, and election is one of inherently limited duration – in fact, the duration would very likely be different

17

in each instance of a vacancy.  *See Jackson*, 426 F.2d at 1334-35 (U.S. House of

Representatives vacancy created on August 13, 1969, with no election called at the

time of the appellate court's May 6, 1970 order remanding to district court in

advance of November 3, 1970 general election); *Judge*, 612 F.3d at 541-42 (two-

year period between commencement of U.S. Senate vacancy and general election

date, from November 16, 2008 until November 2, 2010).[3]  In other words, this is

not the type of case involving election laws that would inherently take more time

to resolve than the election cycle permits.  *Cf. Moore v. Ogilvie*, 394 U.S. 814, 816

(1969); *Porter v. Jones,* 319 F.3d 483, 490 (9th Cir. 2003) ("Election cases often

fall within this exception, because the inherently brief duration of an election is

almost invariably too short to enable full litigation on the merits.").  Courts are

clear that the "capable of repetition, yet evading review" exception "is concerned

not with particular lawsuits, but with classes of cases that, absent an exception,

---

[3]In *Judge*, mootness was not an issue because the appellate court concluded that there was still
time for the Governor to order an election:

> There is still time for the governor to issue a writ of election that will call
> for an election on the date established by Illinois law and that will make it
> clear to the voters that they are selecting a replacement for Senator
> Obama.  The district court can easily reach and resolve the merits of this
> request before any of the harm that the plaintiffs forecast comes to pass.
> Moreover, circumstances change: Governor Quinn might issue a writ of
> election tomorrow, or next week.

*Judge*, 612 F.3d at 557.

would *always* evade judicial review." *Protectmarriage.com,* 752 F.3d at 836. This is not such a case. *See id.* ("These actions are not of 'inherently limited duration,' because the challenged conduct might never occur.").

Plaintiffs' inability to obtain the relief sought here is not due to any *inherent* limitation in this kind of dispute. Instead, it is due to their own delay in seeking relief. Accordingly, Plaintiffs fail to establish the application of the first element of the "evading review" exception.

### 2. No Reasonable Expectation That Plaintiffs Will Be Subject To The Same Challenged Activity

As to the second element of the exception, "plaintiffs have the burden of showing that there is a reasonable expectation that they will once again be subjected to the challenged activity." *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985). "Speculative contingencies afford no basis for finding the existence of a continuing controversy between the litigants," and "when the chance of repetition is remote and speculative, there is no jurisdiction." *Id.*

The "capable of repetition, yet evading review" exception is inapplicable in this case because there is insufficient evidence demonstrating that any actions challenged by Plaintiffs can reasonably be expected to be repeated. Plaintiffs *may* be correct that another Senate vacancy will occur in Hawaii during their lifetimes.

And they *may* be correct that the procedures in HRS § 17-1 will operate to fill the vacancy until an election is held resulting in a similar length of time between temporary appointment and election as was the case here. There is no reasonable likelihood, however, that these Plaintiffs will be subject to the same injury or challenged action again.[4] In part, that is because Plaintiffs have demonstrated no injury to themselves that is likely to be repeated. This case is not the typical challenge to election laws that will be enforced during each two-year or four-year general election cycle. *Cf. Schaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir. 2000) (finding challenge not moot where the state would unquestionably enforce the U.S. House of Representatives candidate residency requirement in the next election cycle); *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1013 (9th Cir. 2002) ("Although the City of Santa Monica's 2000 election has passed, Rubin's claims are capable of repetition because future city election overseers would deny him the ability to use the designation 'peace activist' on the ballot" for a City Council seat).

In fact, Plaintiffs' articulated injury is difficult to parse. "Plaintiffs do not claim that they were completely deprived of the right to vote for a Senator to fill

_____

[4]Indeed, the parties agree that Hawaii has only had two Senate vacancies in its 56-year history as a State, one occurring in 1990 (Sen. Matsunaga) and the other in 2012 (Sen. Inouye).

the vacancy in question. Instead, Plaintiffs claim that the State Defendants placed unlawful burdens on their right to vote for Hawaii's Senator[.]" Mem. in Opp. to Schatz Motion at 6. They "seek declaratory relief that would redress the injury they claim in the case of future vacancies." *Id.* at 9. Whatever the "unlawful burden" they claim they will again experience on some contingent future date, Plaintiffs' purported injury appears to apply to all voters within the State of Hawaii. Such a hypothetical and generalized grievance does not suffice. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992) ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and intangibly benefits him than it does the public at large—does not state an Article III case or controversy."); *Lance v. Coffman*, 549 U.S. 437, 110-41 (2007) (A plaintiff must show how his or her averred injury is peculiar and singular, distinguished from an injury shared equally with his or her fellow citizens.).[5]

_____

[5]Although the Court does not reach Defendants' standing arguments, it recognizes that the analysis of mootness overlaps with portions of the standing inquiry, particularly with respect to the injury analysis. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (describing mootness as "the doctrine of standing set in a time frame.")); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1253 n.6 (9th Cir. 2007) ("The requisite personal interest that must exist

In sum, Plaintiffs' claims are moot, and the exception they rely on has no application to the circumstances presented here. Accordingly, the Court is without subject matter jurisdiction, and the complaint is hereby dismissed.[6]

## II.     Plaintiffs' Motion to Dismiss Evans' Counterclaim Is Granted

Evans, who is proceeding pro se, filed a Counterclaim for "malicious prosecution" against Hamamoto and Roco. They seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

To bring a claim of malicious prosecution, Plaintiff must allege "(1) that the prior proceedings were terminated in the plaintiffs' favor, (2) that the prior proceedings were initiated without probable cause, and (3) that the prior proceedings were initiated with malice." *Myers v. Cohen*, 67 Haw. 389, 688 P.2d 1145, 1148 (1984) (involving malicious prosecution claim against attorney who filed allegedly false complaint); *see also Flowers v. Seki,* 45 F. Supp. 2d 794, 802 (D. Haw. 1998) ("While Plaintiff's claim here is a claim for malicious or wrongful

---

at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (citation omitted).

[6]Plaintiffs' oral request for leave to amend is denied, as amendment would be futile. *See, e.g., Temple v. Abercrombie*, 903 F. Supp. 2d 1024, 1032 (D. Haw. 2012) ("Keeping in mind that leave to amend is freely given under Federal Rule of Civil Procedure 15(a)(2), it would be futile to allow an amended complaint that lacks subject matter jurisdiction.") (citing *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009) (reiterating that "futility of amendment alone can justify the denial of a motion [to amend]")).

prosecution in the civil or administrative context, it is nonetheless akin to a claim for malicious criminal prosecution, and thus, the court looks to the cases regarding malicious prosecution for guidance."). The allegations in the Counterclaim fail to state such a claim.

Notably, Evans has not been "prosecuted" maliciously or otherwise. There is no "prior proceeding." *See Fraser v. County of Maui*, 855 F. Supp. 1167, 1181 (D. Haw. 1994) (citing Restatement (Second) of Torts § 654 (1977)). The Counterclaim states simply: "Plaintiff herein files this Counter Claim and asks the Court to award to co-Defendant Brian Evans $1,000,000 for Malicious Prosecution. As the Plaintiffs admit in their initial Complaint, they *admit* that Co-Defendant Evans has absolutely nothing to do with this case, and just threw his name into this case for the hell of it." Evans Counterclaim and Motion at 1. The Counterclaim is without facial plausibility because Evans pleads no factual content that allows the court to draw the reasonable inference that Plaintiffs are liable for malicious prosecution. Accordingly, Plaintiffs' Motion to Dismiss the Counterclaim is GRANTED.

## III.    Evans' Motion for Sanctions Is Denied

Plaintiffs named Evans and at least seven other individuals who were candidates for the U.S. Senate seat as Defendants in this action. Plaintiffs contend

that they named the candidates for the sole purpose of according relief among the existing parties under Fed. R. Civ. P. 19(a). Complaint ¶¶ 14-21. Evans' motion states that Plaintiffs naming him as a Defendant in this matter "is causing undue stress, undue expense and undue duress to a named co-defendant that the Plaintiff[s] admit[] in their very own Complaint that the co-Defendant has absolutely nothing to do with. It cannot be tolerated, and merely dismissing the Co-Defendant from the case is not enough." Evans Counterclaim and Motion at 1. According to Evans, the "Court must send the message that it is a serious entity, and not one where games can be played at the expense of others, in this case me, and the Honorable Court." *Id.* Evans appears to seek $1,000,000 as a sanction, but his motion does not specify the legal authority for the sanctions he seeks.

As explained by the Ninth Circuit in *Fink v. Gomez*:

> Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power.

239 F.3d 989, 991 (9th Cir. 2001). Evans has not demonstrated that he is entitled to sanctions under any of these authorities.

First, Evans has not satisfied the prerequisites for sanctions under Rule 11(c)(2).  Moreover, Plaintiffs' counsel conducted a reasonable inquiry into the existing law on the subject of Rule 19 before naming the candidates for U.S. Senate as Defendants.  There is no evidence that these candidates were named for some improper purpose and, indeed, Plaintiffs' counsel has been transparently clear that no actual relief was being sought from these individual Defendants.

Second, Evans is not entitled to sanctions under 28 U.S.C. § 1927, as there is no evidence of conduct by counsel that unreasonably and vexatiously multiplied the proceedings.

Third, the Court finds no indication of "bad faith or conduct tantamount to bad faith."  *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1061 (9th Cir. 2009).  Nor does Evans demonstrate any recklessness on the part of Plaintiffs that is "combined with an additional factor such as frivolousness, harassment, or an improper purpose."  *Fink*, 239 F.3d at 994.  Accordingly, Evan's Motion for Sanctions is DENIED.

## CONCLUSION

On the basis of the foregoing, the Court GRANTS both the State Defendants' Motion to Dismiss and Senator Brian Schatz's Motion to Dismiss. Plaintiffs' Motion to Dismiss the Counterclaim filed by Brian Evans is

GRANTED, and Evans' Motion for Sanctions is DENIED. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: February 23, 2015 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
United States District Judge

---

Eugene Hamamoto, et al. v. David Y. Ige, et al.; Civil No. 14-00491 DKW-BMK;
**ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS
COMPLAINT; (2) GRANTING PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIM; AND (3) DENYING DEFENDANT
BRIAN EVANS' MOTION FOR SANCTIONS**